UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

────────────────────────────────

BARBARA MANSON,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　08 Civ. 3890 (CS) (LMS)
　　-against-　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　REPORT AND
　　　　　　　　　　　　　　　　　　)　　RECOMMENDATION
RICHARD FRIEDBERG and　　　　　　　)
OLDSTONE VENTURES, LLC,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　)
────────────────────────────────

TO:　　THE HONORABLE CATHY SEIBEL,
　　　　UNITED STATES DISTRICT JUDGE

　　　　This action was commenced on April 25, 2008, by Barbara Manson against the above-named Defendants by the filing of a Complaint that alleged sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and the Human Rights Law of New York State, Section 296 of the Executive Law.  Complaint (herein, "Comp.") at 3-4.  On January 12, 2009, Defendant Richard Friedberg filed for bankruptcy, which stayed this action with regard to him individually.  Docket #12, Suggestion of Bankruptcy; Minute Entry for 7/10/09.  On October 23, 2009, Your Honor entered a default judgment against Defendant Old Stone Ventures and referred the matter to me for an inquest on damages.  See Transcript of Default Hearing held 10/23/09 (herein, "Default Hearing") at 2; Docket #21, Order of Reference.  On May 26, 2010, I conducted an inquest hearing pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993)("Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that on the matter of damages 'the court may conduct such

1

hearings or order such references as it deems necessary and proper' "); See also Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

Although Defendant was notified of the damages hearing by the Court, an attorney for Old Stone Ventures did not appear nor did Defendant submit any factual documentation regarding the amount of damages to be awarded.[1] See generally Transcript of Inquest Hearing (herein, "Inquest Hearing"). In support of her application for relief, Plaintiff testified on her own behalf and submitted documentation of her wages while employed by Defendant, as well as documentation of the wages she earned after being terminated by Defendant. See Inquest Hearing; Court Exhibits 3, 4, 5, 7. On the basis of this evidence, Plaintiff seeks back pay in the amount of $67,000 and compensatory damages for emotional distress in the amount of $53,000. Docket #23, Affirmation of Michael Sussman (herein, "Aff.") at ¶10 Additionally, Plaintiff seeks attorney's fees in the amount of $10,962.50 and costs in the amount of $450.

For the reasons stated below, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff should be awarded $67,060 in back pay and $10,000 in emotional distress damages. Plaintiff's counsel should also be awarded $11,062.50 in attorney's fees and $450 in costs.

I.   **STANDARD FOR CONDUCTING AN INQUEST ON DAMAGES**

In determining the amount of a default judgment, the Court should accept "as true all

---

[1] Attorney Melissa Neier, of Ivey, Barnum & O'Mara, did not put in an official appearance in the case but did attend the hearing as the Chapter 11 Trustee for Defendant Friedberg's personal bankruptcy case. Ms. Neier made the argument that, since the proceedings were stayed due to bankruptcy for Mr. Friedberg, then these proceedings as to Old Stone Ventures, an LLC wholly owned by Mr. Friedberg, should also be stayed. Inquest Hearing at 2-18. This Court rejected that application. Inquest Hearing at 16-18.

factual allegations of the complaint, except those relating to damages." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  Additionally, the plaintiff is "entitled to all reasonable inferences from the evidence offered."  Id.  Where appropriate, however, the Court retains discretion "to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action."  Id.

## II.     FACTS

The following findings are based on the testimony and moving papers submitted by Plaintiff, as well as the allegations set forth in the Complaint, all of which together establish the defaulting Defendant's liability.  These sources demonstrate that Plaintiff worked as a real estate consultant for Defendant Old Stone Ventures, earning roughly $2,000 every two weeks, and as a hostess for Defendant's restaurant, Monteverde, at a rate of $10 an hour.  Comp. at ¶4, 5; Inquest Hearing at 19-20.  In the fall of 2006, Richard Friedberg, owner of Old Stone Ventures, initiated sexual contact with Plaintiff and, shortly thereafter, Plaintiff consented to have oral sex with Friedberg. Comp. at ¶8, 9.  In March of 2007, Friedberg again initiated sexual contact with Plaintiff, which Plaintiff repelled.  Id. at ¶10; Inquest Hearing at 34-35.  On April 16, 2007, during business hours, Friedberg entered Plaintiff's work area and put his hands down the front of her pants.  Id. at 11; Inquest Hearing at 29.  Plaintiff again made clear that she was not receptive to Friedberg's advances.  Id.  Roughly three weeks later, Friedberg terminated Plaintiff's employment.  Id. at  ¶15; Inquest Hearing at 20, 34.

## III.    DISCUSSION

Plaintiff is seeking damages for back pay and emotional distress, as well as attorney's fees.

    A.     Back Pay

Plaintiff makes a general request in the submitted affirmation of an award of back pay in the amount of "at least $67,000." Aff. at ¶10. Plaintiff claims that she is due $1,000 that was never paid to her for work she had done for Defendant before he terminated her. Id; Inquest Hearing at 21. Plaintiff further claims that she was paid "$2,000 every two weeks" for her services as a real estate consultant at the time that she was terminated in May of 2007, and $10 per hour for her work as a hostess at Defendant's restaurant "a few hours a week." Id; Plaintiff's Exhibits 3, 7; Inquest Hearing at 19-20. After she was fired, Plaintiff mitigated her damages by working as a real estate salesperson for Keller-Williams, selling one house in 2009 for a $6,000 commission; as a teacher's aide for Cornwall Central School District earning $260 in 2007; as a sales person for Indigo Chic, a clothing boutique, where she earned $10 per hour; as a waitress for Garrison Properties, earning $428; and as an advertising sales person for New York House Magazine, where she is currently employed and earns $2,500 per month plus commission. Aff. at ¶10; Plaintiff's Exhibit 4, 5; Inquest Hearing at 22-25, 53-54.

A prevailing plaintiff in a discrimination action is entitled to back pay from the date of termination to the date of judgment. 42 U.S.C. §2000e-5(g)(1); Saulpaugh v. Monroe County Hospital, 4 F.3d 134 , 144 (2d Cir. 1993) cert. denied 510 U.S. 1164 (1994). However, a prevailing plaintiff still has the duty to mitigate damages. See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53-55 (2d Cir. 1998).[2]

Plaintiff was terminated in May of 2007 and a default judgment was issued in this case on October 23, 2009. This is a period of two years and five months, or 124 weeks. Thus,

---

[2]Case law in this area also allows for pre-judgment interest on the amount of back pay awarded by the court, in its discretion. See Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998). As Plaintiff has not requested this in the submitted Affirmation, this Court will not address this issue.

Plaintiff's back pay amounts to:

| | |
|---|---|
| Real Estate Consulting: | 124 weeks X $1,000/week = $124,000 |
| Hostess Work: | 124 weeks X $10/hour, 3 hours/week = $3,720 |
| | Total Back Pay = $127,720 |

In addition, the $1,000 already due Plaintiff for work that she did on Defendant's behalf before being terminated brings the final amount to $128,720. This amount must then be reduced by the amount that Plaintiff earned working other jobs during this time period:

| | |
|---|---|
| Real Estate Sales: | $6,000 |
| Teacher's Aide: | $260 |
| Indigo Chic Sales:[3] | $10,400 |
| Advertising Sales:[4] | $45,000 |
| Total Mitigation: | $61,660 |

When this amount is subtracted from the total amount of back pay the result is:

| | |
|---|---|
| Total Back Pay: | $128,720 |
| Mitigation Amount: | $61,660 |
| | $67,060 |

Thus, I conclude that Plaintiff's total award of back pay should be $67,060.

    B.    <u>Emotional Distress Damages</u>

---

[3] Plaintiff testified that she only worked in this boutique for one year, "3 to 4 days a week...full days...then it just came to being on a weekend." Inquest Hearing at 23, 53-54. This Court has estimated this response as an average of 20 hours a week. Thus, 52 weeks in a year at $200/week is $10,400.

[4] Plaintiff testified that she only began working in advertising sales in March of 2008. Inquest Hearing at 53. Therefore, her earnings in this regard are only calculated on the basis of 18 months – 18 months at $2,500/month is $45,000.

Plaintiff claims that she is entitled to emotional distress damages in the amount of $53,000 because she "suffered considerable distress and depression as a consequence of being used and thrown away by the defendant." Aff. at ¶10. Plaintiff further testified that she had low self-esteem, felt "unworthy," and "was having a difficult time feeling trust." Inquest Hearing at 41-42. Plaintiff also testified that she "didn't have confidence" in herself anymore, that her "thinking process was difficult," that she didn't have any energy, and that she only wanted to find a job "that didn't require too much." Id. at 43-44. Plaintiff did not testify to any physical manifestations of her emotional distress nor did she seek any medical or psychiatric treatment.

A prevailing plaintiff in a Title VII action is entitled to be compensated for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. §1981a(b)(3). Punitive damages may also be awarded if a prevailing plaintiff can show that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §1981a(b)(1). Plaintiff has not requested punitive damages but is seeking $53,000 in compensatory damages based on emotional distress.

Title VII also provides for monetary caps on compensatory damages based on the number of employees that a defendant has. If an employer has 14-100 employees, compensatory damages are capped at $50,000; 101-200 employees, the cap is $100,000; 201-500 employees, the cap is $200,000; and more than 500 employees, the cap is $300,000. 42 U.S.C. §1981a(b)(3)(A-D). Here, Plaintiff has not indicated the size of the Defendant corporation so there is no way for this Court to know which cap is applicable. However, Plaintiff also brings her claim under New York Human Rights Law (herein, "NYHRL"), which allows for compensatory damages for mental anguish and humiliation and does not impose a monetary cap. It is well settled that a plaintiff can recover damages under both Title VII and the NYHRL. See

Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 459 (1975)("[T]he aggrieved individual...is not limited to Title VII in his [or her] search for relief").  Thus, this Court will assess Plaintiff's claim of emotional distress under the NYHRL.

Under NYHRL, compensatory damages are appropriate for mental anguish and such an award may be based solely on the plaintiff's testimony.  New York City Transit Authority v. State Division of Human Rights, 78 N.Y.2d 207, 214-16 (1991); see also Port Washington Police District v. State Division of Human Rights, 221 A.D.2d 639 (2nd Dept. 1995); City of Fulton v. New York State Division of Human Rights, 221 A.D.2d 971 (4th Dept. 1995).  "[P]sychiatric or other medical treatment is not a precondition to recovery."  NYC Transit Auth., 78 N.Y.2d at 216.  However, when determining an award, courts should consider "the duration, severity, consequences and physical manifestations of the mental anguish."  Gleason v. Callanan Industries Inc., 203 A.D.2d 750, 752 (2nd Dept. 1994); see also Equal Employment Opportunity Commission v. Yellow Freight System, Inc., No. 98 Civ. 2270 (THK), 2002 WL 31011859 at *33 (S.D.N.Y. Sept. 9, 2002).  Damages for emotional distress should also be "reasonably related to the effects of the [wrongdoing] and [] consistent with damages awarded in comparable cases."  See Jowers v. DME Interactive Holdings, Inc., No. 00 Civ. 4753 (LTS)(KNF), 2006 WL 1408671 at *3-4 (S.D.N.Y. May 22, 2006).

Moreover, "[f]or typical or garden variety emotional distress claims, district courts have awarded damages ranging from $5,000 to $35,000, based upon the plaintiff's vague or conclusory testimony of distress."  Becerril v. East Bronx NAACP Child Development Center, No. 08 Civ. 10283 (PAC)(KNF), 2009 WL 2611950 at *6 (S.D.N.Y. Aug. 18, 2009)(internal quotes and citations omitted)(Report and Recommendation adopted by Becerril v. East Bronx NAACP Child Development Center, No. 08 Civ. 10283 (PAC)(KNF), 2009 WL 2872992 (S.D.N.Y. Sept. 17, 2009).  "Significant or substantial emotional distress claims, which garner

awards of $50,000 to $100,000, consist of more substantial harm, usually evidenced through medical testimony or documentation." Id. See also Press v. Concord Mortgage Corporation, No. 08 Civ. 9497 (PKC)(GWG), 2009 WL 6758998 at *7 (S.D.N.Y. Dec. 7, 2009)(Report and Recommendation adopted by Press v. Concord Mortgage Corporation, No. 08 Civ. 9497 (PKC)(GWG), 2009 WL 3199684 (S.D.N.Y. Aug. 11, 2010)(modified in other respects).

Here, Plaintiff supports her claim of emotional distress with her testimony that she had low self-esteem, felt "unworthy," and "was having a difficult time feeling trust." Inquest Hearing at 41-42.  Plaintiff also testified that she "didn't have confidence" in herself anymore, that her "thinking process was difficult," that she didn't have any energy, and that she only wanted to find a job "that didn't require too much." Id. at 43-44.  Plaintiff did not testify to any physical manifestations of her emotional distress nor did she seek any medical or psychiatric treatment.

Plaintiff seeks $53,000 in compensatory damages for her emotional distress.  Aff. at ¶10.  This Court finds that Plaintiff's testimony does not support an award of this magnitude.  See Town of Lumberland v. New York State Division of Human Rights, 229 A.D.2d 631, 637 (2nd Dept. 1996)(reducing $150,000 award for emotional distress to $20,000 where plaintiff testified she was "very, very upset," "humiliated," "embarrassed to be seen in town," and that she "couldn't eat" and "cried," but did not present any other evidence of the severity and consequence of her condition); Gleason, 203 A.D.2d at 752 (finding an award of $54,000 to be supported by evidence that plaintiff suffered from irritable bowel syndrome, migraines, pains in her side, insomnia, depression, and mental shock); New York State Department of Correctional Services v. State Division of Human Rights, 207 A.D.2d 585, 586 (3rd Dept. 1994)(reducing $25,000 award of compensatory damages for mental anguish and humiliation to $10,000 where there was an absence of proof apart from plaintiff's testimony that she felt depressed and angry,

lost sleep, became involved in arguments with her fiancé, and saw a psychiatrist five or six times); Port Washington, 221 A.D.2d at 640 (remitting to the Commissioner to reduce the award for compensatory damages from $200,000 to no more than $5,000 because plaintiff's discussion of her mental anguish was brief and there was no evidence of the duration of her condition, its severity or consequences); City of Fulton, 221 A.D.2d at 971 (4th Dept. 1995)(finding an award of $50,000 in mental anguish excessive and awarding $10,000 based on testimony of plaintiff that he felt "very upset and disappointed," "felt bad," had "lost sleep," and was "mean at home"); Jowers, 2006 WL 1408671 at *4 (adopting magistrate judge's award of $15,000 for emotional distress where plaintiff testified that she suffered "continued stress, anger, sadness, and frustration," suffered "an ongoing humiliation," cried most days, was depressed, suffered panic attacks, headaches, nausea, loss of appetite, insomnia and broke out in hives); Becerril, 2009 WL 2611950 at *6 (awarding $50,000 for emotional distress that was "significant" where plaintiff submitted documentation from her physician that she was prescribed three medications, was diagnosed as depressed, suffered migraines and post-concussive syndrome); Press, 2009 WL 6758998 at *7-8 (finding that an award of $5,000 was sufficient where plaintiff simply made a conclusory allegation that he suffered emotional distress); Yellow Freight, 2002 WL 31011859 at *33-34 (finding that no award for emotional distress was warranted where plaintiff testified that he "felt very bad," and that he was "hurt" when Yellow Freight fired him).

Based on Plaintiff's testimony, which is vague and conclusory and does not address the severity or duration of her emotional distress; and based on the damages awarded in the collection of cases listed above, this Court finds that an award of $10,000 is sufficient to address Plaintiff's claim of emotional distress.

    C.    Attorney's Fees and Costs

Plaintiff's attorney makes an application in the submitted Affirmation for attorney's fees

and costs in the amount of $6,000 and $600, respectively. Aff. at ¶10. Later, in the same Affirmation, Plaintiff's attorney states that he "expended 36 hours on this matter," at an hourly rate of $375, and that he "expended $420 in recoverable costs." Aff. at ¶11. This comes to a total of $13,400 for the fees alone. Then, Plaintiff's attorney submitted an itemized listing of his hours worked ($10,962.50) and the costs expended ($450) which comes to a total of $11,412.50. As this last number is the only request that is substantiated by evidence (i.e. specific accounting of the time expended), then this Court will assume that this is the amount Plaintiff's counsel is seeking in fees.[5]

The Court has wide discretion in determining whether to award attorneys' fees and in determining the reasonableness of any such award. Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 190 (2d Cir.2008). A reasonable fee is calculated by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart et al., 461 U.S. 424, 433 (1983). This is often referred to as the "lodestar method" and is the method that has "achieved dominance in the federal courts." Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002). "The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190. Courts are also to consider that a reasonable client wishes to "spend the minimum necessary to litigate the case effectively." Id.

The Second Circuit has held that "[i]n determining what rate a paying client would be

---

[5]Plaintiff's counsel actually makes two errors in math in his calculations. First, he states the total amount of time to be 29.5 hours but when this Court added the multiples of time, it amounted to 29.75 hours. However, it will be assumed that counsel purposefully rounded down the time to 29.5 and the Court will use this number. Second, even when using the 29.5 number, counsel makes an error in multiplying by his requested $375 an hour; the total should be $11,062.50, not $10,962.50 as counsel claims. Counsel has also requested $450 in costs.

willing to pay, the district court should consider, among others, the Johnson factors." Id. (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989)).[6]  Thus, the Second Circuit's approach is an amalgam of the lodestar method and the Johnson factors called the "presumptively reasonable fee." Id. at 118.  However, in a recent decision, Perdue v. Kenny A., the Supreme Court reiterated that the lodestar method is "the guiding light of our fee-shifting jurisprudence," noting that it was "readily administrable" and "objective." Perdue v. Kenny A., 130 S. Ct. 1662, 1672 (2010)(internal quotes and citations omitted).  In Perdue, the Supreme Court stated that "there is a 'strong presumption' that the lodestar figure is reasonable" and valued the fact that, unlike the Johnson factors, the lodestar method "cabins the discretion of trial judges." Id. at 1672-3.  Furthermore, in Perdue, the Supreme Court noted that the presumption that the lodestar figure was a reasonable one "may be overcome in those *rare circumstances* in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Id. at 1673 (emphasis added).  However, it is understood that the lodestar figure "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." Id. at 1673.  While the Supreme Court, in Perdue, did not overtly overrule the Second Circuit method of incorporating both the lodestar figure and the Johnson factors in determining attorney's fees, it appears that they prefer district courts to use the more objective lodestar

---

[6] The 12 factors enumerated in Johnson are "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Johnson, 488 F.2d at 717-719.

11

approach and only to consider the Johnson factors if such a "rare circumstance" requires it.

Under Title VII, a prevailing party may recover "a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. §2000e-5(k). In determining if the requested hourly fee is reasonable, a court must analyze whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896, n.11 (1984); see also Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998). Additionally, courts may consider the customary billing rate charged by the attorney as well as if there was a rate specified in any retainer agreement. See Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003)("A reasonable starting rate for determining the hourly rate for purposes of a lodestar calculation is the attorney's customary rate"); Reiter v. Metropolitan Transportation Authority, No. 01 Civ. 2762 (GWG), 2004 WL 2072369 at *5-7 (S.D.N.Y. Sept. 10, 2004); Tatum v. City of New York, No. 06 Civ. 4290 (PGG)(GWG), 2010 WL 334975 at *4 (S.D.N.Y. Jan. 28, 2010). A court may also rely on "its own knowledge of comparable rates charged by lawyers in the district." Tatum, 2010 WL 334975 at *4; Yea Kim v. 167 Nail Plaza, Inc., No. 05 Civ. 8560 (GBD)(GWG), 2009 WL 77876 at *8 (S.D.N.Y. Jan. 12, 2009). Ultimately, "[t]he fee applicant bears the burden of establishing the reasonableness of the hourly rates requested." Yea Kim, 2009 WL 77876 at *7; Reiter, 2004 WL 2072369 at *4.

In this instance, Plaintiff's counsel submits his request along with a sheet detailing the hours and costs expended. He states that he "is entitled to an hourly rate of $375.00 and this Court has so adjudicated in other matters," but gives no references or case law to support his contention. Aff. at ¶11. He provides no evidence that his request is in line with the prevailing rate in the district nor does he submit any independent evidence of his experience, skill or

reputation. Moreover, Plaintiff's counsel fails to submit any documentation of his customary billing rate or any rate that may have been stated in a retainer agreement for this case.

"[C]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600." Tatum, 2010 WL 334975 at *5; see also Sheehan v. Metropolitan Life Insurance Co., 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006)(awarding $425/hour for a partner with "decades of experience"); New York State National Organization for Women v. Pataki, No. 93 Civ. 7146 (RLC), 2003 WL 2006608 at *2-3 (S.D.N.Y. April 30, 2003)(awarding $400/hour and $430/hour for two attorneys who "both have more than 30 years of experience with civil rights and labor and employment law"); *but see* Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005)(awarding $250/hour for lead attorney); Pascuiti v. New York Yankees, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000)(awarding $250/hour for attorneys with almost 30 years experience in civil rights litigation). In Pascuiti, the District Court found that the "range of fees in this District for 'seasoned civil rights litigators,' particularly those in small firms, is between $200/hr and $300/hr." Pascuiti, 108 F. Supp. 2d at 266(citations omitted). Allowing for inflation, "the range for these 'seasoned' litigators would be $254-381/hour today." Yea Kim, 2009 WL 77876 at *8.

In its own independent search, this Court found only two reported cases in which Mr. Sussman, Plaintiff's attorney, was awarded attorney's fees in the Southern District. In Knoeffler v. Town of Mamakating, 126 F. Supp. 305, 311-12 (S.D.N.Y. 2000), Mr. Sussman's request of $325 per hour was reduced to $300 per hour, stating that "[c]ourts have consistently found that $300 for a lead attorney is well within reason." Furthermore, the Court in Ward v. New York City Transit Authority, No. 97 Civ. 8550 (HB), 1999 WL 446025 at *9-10 (S.D.N.Y. June 28, 1999) found that "a rate of $300 per hour is reasonable for an experienced civil rights litigator

like Mr. Sussman."

The undersigned is very familiar with Mr. Sussman, who regularly represents plaintiffs in this Court, primarily in civil rights cases. Mr. Sussman is highly experienced and capable, having appeared on dozens of cases in this Court. Not only is he highly experienced and capable as a trial attorney, but he has had significant success for many of his clients. Under all of the circumstances I conclude, and respectfully recommend that Your Honor should conclude, that $375 per hour is a reasonable hourly rate for Mr. Sussman. Thus, the equation would be 29.5 hours multiplied by $375 per hour for a total award of $11,062.50. Mr. Sussman is also entitled to $450 in costs.

## V.    CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff should be awarded $67,060 in back pay and $10,000 in emotional distress damages. Plaintiff's counsel should also be awarded $11,062.50 in attorney's fees and $450 in costs.

## VI.    NOTICE

To ensure that the defaulting Defendant has an opportunity to consider whether to belatedly file an appearance in this case, thus enabling it to file objections to this Report and Recommendation, Plaintiff is hereby directed to provide copies of this Report and Recommendation to the defaulting Defendant by service through the United States Mail. Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days from the date hereof, to file written objections to this Report and Recommendation. See Fed. R. Civ. P. 6(a). Such objections, if any, shall be filed with the Clerk

of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel, United States Courthouse, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: November 30, 2010
       White Plains, New York

                                        Respectfully Submitted,

                                        LISA MARGARET SMITH
                                        United States Magistrate Judge
                                        Southern District of New York

Copies of the foregoing Report and Recommendation have been sent to the following:

The Honorable Cathy Seibel

Michael Sussman
Sussman & Watkins
P.O. Box 1005
55 East Main Street
Goshen, NY 10924

Old Stone Ventures
28 Bear Mountain Bridge Road
Cortlandt Manor, NY 10567

Richard Friedberg
563 Riverside Ave
Westport, CT 06880

15